UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:

STUART ROY MILLER

      Debtor.
_____/

Case No. 20-22497-EPK
Chapter 11

## DEBTOR'S SUB-CHAPTER V PLAN

Stuart Roy Miller, Debtor-in-Possession, pursuant to sections 1189 and 1190 of the Bankruptcy Code,[1] by and through undersigned counsel, respectfully files the following Plan of Reorganization:

### SECTION 1

### BRIEF HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR PURSUANT TO 11 U.S.C. § 1190(1)(A)

The Debtor formed Denials Recovery Group, Inc ("**DRG**") in August 2016 to provide medical claims denials recovery for large health clinics and hospital systems and, subsequently, to provide preventative care services such as Chronic Care Management (CCM), Annual Wellness Visits (AWV) and Transitional Care Management Services (TCM).  The Debtor was the president and chief operating officer of DRG, with a seventy percent (70%) ownership interest.  DRG hired the former chief financial officer of Sharp Healthcare, Steven Lash, who became the executive vice president and received a thirty percent (30%) ownership interest in DRG.  Mr. Lash hired Veronica Sepulveda, a senior medical coder and manager and Betsy Harris, as vice president of operations.  As president and chief operating officer of DRG, the Debtor's role was to grow the company and work with Mr. Lash to raise funds.  DRG generated close to $ 2 million by 2018.

---

[1] 11 U.S.C. §§ 101, *et seq*.

The Debtor provided the initial funding for DRG of approximately $250,000.00 but required additional capital thereafter. The Debtor sought out Bryan Kastleman, who had successfully invested with the Debtor in the past. Mr. Kastleman then brought in John Gilmore and they loaned $500,000.00 and $300,000.00, respectively, to DRG. The repayment to Mr. Kastleman was $1 million dollars and Mr. Gilmore repayment was $600,000.00. Mr. Kastleman also became a 5% shareholder in DRG. In addition to the above loans, the Debtor was able to secure another $125,000.00 from a group of 4 associates, another $50,000.00 from a doctor and then utilizing cash advance companies brought in roughly another $300,000 to help with the cash flow of the company.

Thereafter, litigation commenced in Texas and Mr. Kastleman obtained a TRO from the Texas courts against DRG in September 2018 and took control of all finances of the company from September 2018 to August 2019 through the sale of DRG to Efftec/Nexteligent International. At the time Mr. Kastleman commenced the litigation, he was the chief financial officer, a board member and a shareholder. The Debtor and DRG incurred approximately $200,000 in legal fees during this period defending the litigation. Mr. Kastleman refused to allow DRG to pay for its defense of the litigation.

In addition, during this period Mr. Kastleman refused to pay Mr. Miller and any of the 8 employees. Very soon after Mr. Kastleman took control of the company all employees left the company because they were not getting paid. The Debtor remained with DRG, grew the business and attempted to resolve the issues with Kastleman. Kastleman refused all settlement offers.

The Debtor located a public company that was interested in purchasing the assets of DRG. Utilizing this sale, the Debtor was able to settle with Mr. Kastleman. However, the requirements

of the settlement agreement upon the Debtor were onerous. Litigation began with Mr. Kastleman which prompted the filing of this bankruptcy.

## SECTION 2

## LIQUIDATION ANALYSIS PURSUANT TO 11 U.S.C. §1190(1)(B)

Debtor's real and personal property are set forth in Schedule A/B [ECF No. 1]. Debtor claims certain assets as exempt from creditors on Schedule C [ECF No. 1]. The Internal Revenue Service ("IRS") filed a priority proof of claim in the amount of $101,863.33. Proof of Claim #4. In addition, the Debtor has domestic support obligations due to Abigail Miller/Child Support Enforcement of approximately $143,902.00, which are entitled to priority under the Bankruptcy Code.

If this Plan is not confirmed, and this case was converted to a case under chapter 7 of the Bankruptcy Code, there would be no dividend paid to non-priority, general unsecured creditors. Any non-exempt assets collected and liquidated by a chapter 7 trustee would first have to satisfy all administrative claims, including chapter 7 trustee administrative and chapter 11 administrative claims, and then satisfy unsecured priority taxing authorities, and outstanding domestic support obligations. There are insufficient non-exempt assets in this estate to make a distribution to non-priority, general unsecured claimants. In fact, the Debtor's non-exempt assets would not even be sufficient to satisfy chapter 7 administrative expenses, much less chapter 11 administrative expenses. A liquidation analysis is attached to the Plan as Exhibit A.

## SECTION 3

## MEANS FOR IMPLEMENTATION OF PLAN PURSUANT TO 11 U.S.C. § 1190(1)(C)

The Debtor asserts that he will have sufficient net disposable monthly income due to his future earnings and other income sources to make the payments required under this Plan. The Debtor's projections of his income and expenses over the life of the Plan are attached as Exhibit

B. In addition, to the extent the Debtor receives any future income from any other sources over the life of the Plan including, but not limited to, future commissions payable from JRS Health Services, LLC, and Disability Insurance payments such future income will be used to increase the payments to creditors.

## SECTION 4

### CLASSIFICATIONS AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

### ADMINISTRATIVE CLAIMS

A.  <u>Debtor' Counsel</u>:  Debtor has employed Robert C. Furr, Esq., and Furr & Cohen, P.A. to represent him in this bankruptcy proceeding.  Debtor's counsel shall file a final fee application.  Debtor paid counsel $50,000 prior to the filing of the bankruptcy.  $13,767.00 was used pre-petition, which includes the filing fee for the bankruptcy proceeding of $1,717.00.  As a result, the pre-petition retainer received from the Debtor was $34,516 which is in counsel's trust account.

B.  <u>Subchapter V Trustee</u>:  Tarek Kiem, Esq. is the appointed subchapter V trustee. The Debtor anticipates that Mr. Kiem's compensation will be approximately $5,000.00 to $10,000. The subchapter V trustee shall file a final fee application.

C.  <u>Payment of Administrative Claims</u>:

(i) If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, each administrative claimant shall be paid their allowed administrative claim over 6-months or sooner in equal installments commencing on the Effective Date and continuing on a monthly basis until paid in full unless the parties agree to other treatment in writing.

(ii) If the Plan is confirmed under section 1191(a), each administrative claim shall be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the administrative claim and the Debtor.

**CLAIMS AND INTERESTS**

**PRIORITY TAX CLAIMS** – The Internal Revenue Service has filed Proof of Claim in the amount of $101,863.33 for priority taxes due pursuant to section 507(a)(8) of the Bankruptcy Code. This claim will be paid in full in equal monthly installments commencing thirty (30) days after the Effective Date and ending five years after the date of the order for relief.

**CLASS 1** – Secured claim of BMW Bank of North America based on amounts due pursuant to an automobile loan for a 2014 BMW 740i. The claimant has filed Proof of Claim #3 in the amount of $23,723.33. The claimant shall continue to be paid in accordance with the terms of the documents evidencing the claim until the claim has been paid in full. The claimant shall retain any liens upon the collateral securing the claim until such time as the claim has been paid in full. Class 1 is unimpaired.

**CLASS 2** – Secured claim of Southeast Financial, LLC based on amounts due pursuant to an automobile loan for a 2014 Kia Cadenza. The claimant has filed Proof of Claim #5 in the amount of $3,298.55. The claimant shall continue to be paid in accordance with the terms of the documents evidencing the claim until the claim has been paid in full. The claimant shall retain any liens upon the collateral securing the claim until such time as the claim has been paid in full. Class 2 is unimpaired.

**CLASS 3** – Secured claim of Hill Country Hillside, Ltd. based on amounts due pursuant to a Final Consent Judgment entered in proceedings pending in the District Court of Travis County, Texas, 53rd Judicial District, for which a Judgment Lien Certificate was filed with the Florida

Secretary of State on December 11, 2019 under document number J19000793909. The personal property securing this claim is of nominal value. As a result, this claim shall be treated as a general unsecured claim in Class 5 and shall receive no distribution as a Class 3 claimant. This claim is impaired.

**CLASS 4** – The priority claim of Abigail Miller/Child Support Enforcement in the approximate amount of $143,902.00, which is a domestic support obligation. This claim will be paid in full in sixty (60) equal monthly installments commencing on the Effective Date or on such other terms as the Debtor and the claimant agree in writing. Class 4 is impaired.

**CLASS 5** – General non-priority unsecured claims. The Debtor shall pay to non-priority unsecured creditors, all of his net disposable income over five years in semi-annual payments commencing on the 180th day following the Effective Date If the Plan is confirmed on a nonconsensual basis, the Subchapter V trustee will make all such payments in accordance with Section 7. Class 5 is impaired.

## SECTION 5
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

A "disputed claim" is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

A. A proof of claim has been field or deemed filed, and the Debtor or another party in interest has filed an objection; or

B. The Debtor scheduled a claim and not marked the claim disputed, contingent, or unliquidated in the schedules and Debtor or other interested party has filed an objection.

No distribution will be made, but all amounts that may be due under the Plan will be held in reserve on account of a disputed claim until such claim is allowed or disallowed by a final non-appealable order.

The Debtor shall retain the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## SECTION 5

### PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. The Debtor assumes, as of the Effective Date, the residential lease with Lauralee Longstaff for the property located at 3421 NW 25th Terrace, Boca Raton, Florida.

B. The Debtor believes that other than the residential lease described above, there are no other leases or executory contracts to which the Debtor is a party. To the extent there is such a lease or executory contract, except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or section 5(A) of this Plan, or that are subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

C. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than the later of: (i) 14 days after the date of the order confirming this Plan, or (ii) 14-days after the entry of the order granting the motion to reject.

## SECTION 6
### EFFECT OF CONFIRMATION AND DISCHARGE OF DEBTOR

If the Debtor's Plan is confirmed under section 1191(a) of the Bankruptcy Code, on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before

confirmation of this Plan, to the extent specified in section 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt:

    A.      Imposed by this Plan; or

    B.      Excepted from discharge under section 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under section 1191(b) of the Bankruptcy Code, confirmation of the Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first <u>5 years</u> of this Plan, or as otherwise provided in section 1192 of the Bankruptcy Code. The Debtor will not be discharged from any debt:

    A.      On which the last payment is due after the first 5 (five) years of the Plan, or as otherwise provided in section 1192 of the Bankruptcy Code; or

    B.      Excepted from discharge under section 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## SECTION 7

### TRUSTEE APPOINTED UNDER SUBCHAPTER V OF CHAPTER 11 - TERM AND COMPENSATION

**A. Term of Trustee under a Consensual Plan:**

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, the service of the Subchapter V Trustee shall terminate when the Plan has been substantially consummated. As such, the Debtor shall make all payments under the Plan, including any deposits required by the Plan to be distributed on the Effective Date and thereafter.

**B. Term of Trustee under a Non-Consensual or Cramdown Plan:**

If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, except as otherwise provided in the Plan or in the order confirming the Plan, the Subchapter V Trustee shall make payments to creditors under the Plan. In that event, the following provisions shall apply to all claims and disbursements made by the Subchapter V Trustee under the Plan:

    i. The Debtor shall file with the Court as a supplement to the Plan and provide notice to all creditors at or before confirmation, a list of all the creditors who will be receiving payments under the Plan, the total amount to be paid to each creditor under the Plan (inclusive of all allowed interest and fees) and the payment terms and schedule for each creditor under the Plan.

    ii. The Debtor shall timely pay to the Subchapter V Trustee all funds needed to make payments to creditors under the Plan. If the Debtor fails to timely make any Plan payment to the Subchapter V Trustee, the Subchapter V Trustee may file and serve a notice of delinquency upon the Debtor and the Debtor's attorney. The Debtor shall have forty-five (45) days from the date of the notice of delinquency to make all payments due under the Plan, including any payments that become due within 45 day period. If the Debtor is seeking to cure the delinquency in a modified Plan, the Debtor must file a motion to modify the confirmed Plan within 45 days of the date of the notice of delinquency. If the Debtor is not current with Plan payments on the 45th day after the date of the notice of delinquency or has not filed a motion to modify within that time period, the Subchapter V Trustee will file and serve a report of non-compliance and may, thereafter, seek the dismissal or conversion of the bankruptcy case to a case under chapter 7 of the Bankruptcy Code.

    iii. Within two (2) weeks of receiving the funds from the Debtor to make the Plan payments, the Subchapter V Trustee will disburse the amounts collected from the Debtor, to the holders of allowed claims pursuant to the treatment in their respective classes and as indicated below:

a. All payments under the Plan will be made by the Subchapter V Trustee to the holder of each allowed claim at the address of such holder as listed on the Schedules and/or Proof of Claim, unless the Subchapter V Trustee has been notified in writing of a change of address.

b. Any payment required to be made under the Plan on a day other than a business day shall be made on the next succeeding business day.

c. Any distributions of cash or other property under the Plan that is unclaimed for a period of six (6) months after such distribution was made shall constitute unclaimed property and any entitlement of any holder of any claim to such distribution shall be extinguished, forever barred, and shall be returned to the Debtor.

d. Claimants shall not be permitted to amend or otherwise modify any claim after the later of the claims bar date or the date of the confirmation hearing without leave of the Bankruptcy Court. Any amendment to a claim filed after the later of the claims bar date or the date of the confirmation hearing shall be deemed disallowed in full and expunged without any action by the Subchapter V Trustee or the Debtor unless the claimholder has obtained prior authorization from the Bankruptcy Court for the filing of such amendment. The Subchapter V Trustee shall have no obligation to recognize any transfer of any claim after distributions have started.

e. Unless expressly provided for in the Plan or the order confirming the Plan, post-petition interest and fees shall not accrue on or after the date on which the bankruptcy petition was filed on account of any claim.

iv. During the pendency of this case, the Debtor shall provide copies of yearly income tax returns to the Subchapter V Trustee (but not file with the Bankruptcy Court) no later than 30 days after the due date to the underlying taxing authority.

C. **Compensation of Subchapter V Trustee:** Under section 330 of the Bankruptcy Code, the Subchapter V Trustee shall be compensated for services and reimbursed for expenses. However, the method of payment of the Subchapter V Trustee compensation depends on the provision under which the Plan is confirmed:

i. The Subchapter V Trustee compensation is estimated to be $5,000.00 through confirmation. The Subchapter V Trustee will apply to the Bankruptcy Court for an award of compensation through the application process that is used by professionals. The Subchapter V Trustee will file a final fee application for compensation to be heard with the other final fee applications in this case.

ii. If the Plan is confirmed on a consensual basis under section 1191(a) of the Bankruptcy Code, then the Subchapter V Trustee's service ends with substantial consummation of the Plan under section 1183(c)(1) of the Bankruptcy Code, and the Subchapter V Trustee may collect approved compensation for all services. The Subchapter V Trustee's allowed compensation, as with any other administrative expenses, is payable on the Effective Date of the Plan, unless the Subchapter V Trustee agrees to a different treatment.

iii. If the Plan is confirmed on a non-consensual basis under section 1191(b) of the Bankruptcy Code, then the Subchapter V Trustee will remain in place for the duration of the Plan, and the Subchapter V Trustee may be entitled to additional compensation for services provided after confirmation. As such, the Subchapter V Trustee may file additional or supplemental fee applications throughout the duration of the Plan. Upon approval of the Subchapter V Trustee's

fee applications in a non-consensual case, as long as all professional administrative claims are similarly treated in the Plan, the Debtor shall pay all fee amounts due to the Subchapter V Trustee on the Effective Date of the Plan, over the remaining life of the Plan, or forthwith.

**SECTION 8**

**GENERAL PROVISONS**

**Definitions and Rules of Construction**

A. The definitions and rules of construction set forth in sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented below.

B. "Debtor" shall mean Stuart Roy Miller, the debtor in these proceedings pending under subchapter V of chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida under case no. 20-22497-EPK.

C. "Effective Date" of this Plan is the first business day following the date that is 14 days after the entry of the order confirming the Plan.  If, however, a stay of the order confirming the Plan is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

D. "Plan" shall mean this plan of reorganization in its entirety, together with all addenda, exhibits, schedules and other attachments hereto, in its present form or as it may be modified, amended or supplemented from time to time.

E. "Priority Claim" shall mean a Claim entitled to priority under section 507(a)(3)-(7) of the Bankruptcy Code.

F. "Priority Tax Claim" shall mean a Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

G. "Subchapter V Trustee" shall mean Tarek Kiem, Esq., the subchapter V trustee appointed under subchapter V of chapter 11 of the Bankruptcy Code.

H. <u>Severability</u>.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

I. <u>Binding effect</u>:  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

J. <u>Captions</u>: The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

K. <u>Controlling effect</u>: Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

L. <u>Retention of Jurisdiction</u>:  The Bankruptcy Court shall retain jurisdiction to enforce the terms of this Plan after the Effective Date of the Plan.

[*Remainder of Page Intentionally Left Blank*]

## SECTION 9

## **CONCLUSION**

Under the Plan, most creditors of the Debtor will participate in some manner in the distributions to be made hereunder. The Debtor believes that the distributions contemplated in the Plan are fair and afford all claimants equitable treatment. ACCORDINGLY, THE DEBTOR RECOMMENDS THAT ALL CLAIMANTS VOTE TO ACCEPT THE PLAN.

Dated:  February 11, 2021

_____
STUART ROY MILLER

FURR & COHEN, P.A.
*Attorneys for the Debtor*
2255 Glades Road, Suite 301E
Boca Raton, FL 33431
561-395-0500
561-338-7532 fax

By: /s/ *Robert C. Furr*_____
      Robert C. Furr, Esq.
      Florida Bar No. 210854
      Alvin S. Goldstein, Esq.
      Florida Bar No. 993621
      rfurr@furrcohen.com
      agoldstein@furrcohen.com